**SO ORDERED.**

**SIGNED January 25, 2011.**



_____
HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE:<br>    CENTRAL LOUISIANA GRAIN<br>    COOPERATIVE, INC. | CASE NO: 08-80475 |
| THOMAS R. WILLSON, TRUSTEE<br>(Plaintiff) | |
| VERSUS: | ADVERSARY NO. 09-8049 |
| MIKE STRAIN, COMMISSIONER<br>OF AGRICULTURE AND FORESTRY,<br>STATE OF LOUISIANA<br>(Defendant) | |

### REASONS FOR DECISION

       This matter comes before the Court on the Motion for Summary Judgment by the defendant, requesting that the plaintiff's complaint be dismissed with prejudice. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E) and (O). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Uniform District Court Rule 83.4.1, incorporated into Local Bankruptcy Rule 9029.3. No party at interest has sought to

withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, the Motion for Summary Judgment is Denied.

## Historical Background

Central Louisiana Grain Cooperative, Inc., operated as a grain dealer and warehouse for the storage of agricultural commodities pursuant to licenses issued by the Louisiana Department of Agriculture and Forestry. On March 13, 2008, the Commissioner of Agriculture was authorized to act as the temporary receiver of Central, due to concerns of the latter's solvency and ability to continue to operate its business, and fulfill its obligations to producers and warehouse patrons. Central filed a voluntary petition under Chapter 7 on April 10, 2008. Mr. Thomas R. Willson was appointed Trustee.

The Trustee asserts that the Commissioner holds "bonds" as required by Louisiana statute and as shown by the Commissioners' records. The Commissioner, however, maintains that Central did not actually post the bonds as required by Louisiana Law, despite the labels on its internal records, but rather, availed itself of the self-insurance option by premium payment. The Commissioner asserts, that, had the bankruptcy filing not intervened, notice would have been published to afford claimants the opportunity to make claims against the self-insurance fund. The Commissioner further maintains that the beneficiaries of the bonds and/or the self-insurance fund are limited in class or scope only to the warehouse patrons and certain grain producers. Thus, it argues that the protection afforded extends only to such parties, and not for the benefit of the debtor's general creditors. It further asserts that Central did not have a legal or equitable interest in the funds at the time the case was filed or any time thereafter. Thus, the funds do not fall within the scope of 11 U.S.C. §541, and do not constitute property of the estate.

## Burden on a Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of

law." "Although summary judgment is a useful device, it must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

In ruling on a motion for summary judgment, the evidence should be considered in the light most favorable to the non-movant. *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983). However, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

**Applicable Louisiana Law**

The present dispute centers on the security for the pre-petition operation of the facility required by Louisiana Law. La. R.S. 3:3410 and 3:3411 require that license applicants post surety bonds issued by a bonding or surety company authorized to do business in Louisiana. The security may also be in the form of a certificate of deposit, letter of credit, or a first mortgage on immovable property for 150% of the amount of the bond, accompanied by a title insurance policy. The facility is also required to maintain insurance against fire and other disasters proportionate to the licensed capacity of the facility, for the full market value of the commodities located therein. Under §3410.1, in lieu of the bonds or other security, the commission is authorized to operate a program of self-insurance for licensed warehouses, grain dealers, and cotton merchants. Alternatively, under La.R.S. §3410.2, the commission may operate a "Grain and Cotton Indemnity Fund" for licenses grain dealers and cotton merchants, funded by assessments on the value of all agricultural commodities regulated under Chapter 3, due and payable to the commission by the licensee at the first point of sale. Under this statute, the assessment expressly does not apply to "grain or cotton purchased or contracted prior to August 15, 2008;" but the statute expressly applies to licensed grain dealers which become insolvent after January 1, 2008.[1] The commission is directed to promulgate rules and regulations to ensure the effective administration and operation of the indemnity fund. Producers are eligible to receive indemnity payments form the Grain and Cotton Indemnity Fund if "the licensed grain dealer becomes insolvent after January 1, 2008," and the licensed grain dealer or cotton merchant does not fully compensate the producer in accordance with a sale.

---

[1] This portion of the statute was added by Acts 2008, No. 920, §1, eff. July 14, 2008; and amended by Acts 2009, No. 24, § 1, eff. June 12, 2009; Acts. 2010, No. 767,. eff. June 30, 2010.

3

The statute further provides that upon the insolvency of a licensed grain dealer or cotton merchant, the proceeds of the fund shall be made available for use in meeting the obligations of the licensee for reimbursement of any producer who sold grain or cotton to the licensee and who was not fully compensated. If the claims against the fund exceed the amounts contained therein, the commission is directed to prorate the claims. A pertinent part (emphasis supplied) of the statute reads as follows:

> "K. Money paid from the Grain and Cotton Indemnity Fund in satisfaction of a valid claim constitutes *a debt obligation* of the person against whom the claim was made."

**Applicable Bankruptcy Law**

It is well-settled that the concept of property of a bankruptcy estate should be interpreted broadly. *See U.S. v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309 (1983). It is the duty of the Chapter 7 Trustee to collect and reduce to money the property of the estate for which he or she serves. In the furtherance of that duty, the Code furnishes the Trustee with a toolbox. A trustee may operate the debtor's business, if authorized by the Court. 11 U.S.C. § 721. The turnover of estate property may be sought pursuant to 11 U.S.C. §542. The Trustee may also seek recovery as a lien creditor or using the avoidance powers allotted under 11 U.S.C. § 544, recover preferences under 11 U.S.C. §547, and avoid fraudulent conveyances under 11 U.S.C. §548.

The Commissioner's statement of uncontested facts admits that funds representing the insurance coverage available to warehouse patrons and grain dealers with valid claims against Central are being held in the Self-Insurance Fund pursuant to La. R.S. 3:3410.1.[2] This admission is especially important. The Commissioner's brief, asserts that the estate lacks a legal or equitable interest in the property at the time the bankruptcy petition is filed; *citing In re American International Refinery*, 402 B.R. 728 (Bkrtcy. W.D. La., 2008, and *In re Schimmlepenninck* 183 F. 3d. 347 (5th Cir. 1999). The Trustee asserts that these cases are inapposite to the case at bar, with the exception of the discussion of the powers of the Trustee in the latter case, recognizing the power of the trustee to bring actions on behalf of both debtor and its creditors, if such actions benefit the

---

[2] The defendant's Answer to the Complaint, at ¶9 and 10, avers that the beneficiaries under a bond, or, in this case, the self-insurance funds, are limited in class to those creditors defined as grain producers.

4

estate.

It is indeed puzzling that the Commissioner's own records (Exhibits A & B, Response and Opposition to Defendant's Motion for Summary Judgment, Doc. #27) identify the surety documents as Bonds in the respective amounts of $25,000.00 and $50,000.00, each issued on June 5, 2007. Of course the Commissioner asserts, notwithstanding the nomenclature, that no bonds were actually provided, but, instead, Central participated in the self-insurance fund.[3] Giving the Commissioner the benefit of some doubt here, this Court notes that the record does not actually reflect the amount(s), if any, actually available to the producers under the self-insurance scheme. We also note that the provisions of La. R.S. 3:3410.2 creating the indemnity fund may not apply to Central's producers, due to the effective date of the act and/or the dates of the contracts (which presumably predate August 15, 2008), notwithstanding the fact that Central's insolvency status after January 1, 2008, is beyond peradventure.

At this juncture, this Court is persuaded that the entire statutory scheme of La. R.S. 3:3410 *et seq.*, is intended to serve the same interest as the bankruptcy code here, that is, to protect the patrons of Grain warehouses or other facilities described in the statute. The Commissioner's position ignores the fact that the patrons it seeks to protect, are the very claimants of the estate, whom the Chapter 7 Trustee will pay once and if a claim is filed and deemed valid. The Court is unprepared to entirely reject the powers of the Trustee to stand in the shoes of such patrons. The defendant makes reference to the number of unsecured and undersecured creditors who are producers and may be eligible for recovery under the bonds or insurance fund.[4]

---

[3] We do note that the so-called "Bonds" are not accompanied by, nor do they appear to be issued by, "a bonding or surety company authorized to do business in the state....," as required by La. R.S. §3410(A). The Court's own review of the claims registry reflects that Travelers Casualty and Surety Company of America, for itself and its predecessors-in-interest, filed a claim on June 2, 2008, reflecting an amount due of $75,000.00 in connection with the issuance of certain commercial surety bonds, each dated May 25, 1983, and certain indemnity agreements. The Trustee objected to this claim (Doc. #476) and the objection was sustained by an Order entered February 9, 2010, and the claim was disallowed. (Doc. #555.)

[4] It is conceivable that the amounts available for recovery under the self-insurance funds could exceed the face amounts of the so-called "Bonds."

The claims registry reflects that objections to claims are still pending on a number of claims.[5] The Court's own review of the claims registry reflects that Travelers Casualty and Surety Company of America, for itself and its predecessors-in-interest, filed a claim on June 2, 2008, reflecting an amount due of $75,000.00 in connection with the issuance of certain commercial surety bonds, each dated May 25, 1983, and certain indemnity agreements.

The trustee also may well be in a position to assert the doctrine of marshaling of assets, if appropriate. That doctrine is intended for the protection of junior creditors, who might lose their opportunity for repayment if senior creditors exhaust a doubly charged fund. Under the doctrine, a senior creditor may be required to exhaust any remedies available to it before proceeding against a fund that is also available to the junior lienholder. Collier on Bankruptcy, ¶544.02[4], Sixteenth Edition.

In short, this Court is not willing to deprive the claimants against this estate, which are ultimately determined to fall within the "patron" classification established by state law, traditionally the source of the right to payment, thereby giving rise to a claim under 11 U.S.C. §101(5), recourse against a fund created for the protection of such a party. It is firmly established that the district court has exclusive jurisdiction over property of the estate. It is inconceivable that this Court, in the exercise of the power delegated to it pursuant to 28 U.S.C. § 157, and §1334, should be derelict in its duty to be the ultimate arbiter in the adjustment of the debtor-creditor relationship. That said, this Court believes it is premature to require the Commissioner to turn over the funds available to this debtor's eligible patrons, pending the completion of the claims allowance process. The bankruptcy code fixes a distribution scheme for expenses and claims in 11 U.S.C. §507, which expressly recognizes the "Allowed unsecured claims of persons-

> (A) Engaged in the production or raising of grain, as defined in section 557(b) of this title, against a debtor who owns or operates a grain storage facility, as defined in section 557(b) of this title, for grain or the proceeds of grain."

11 U.S.C. §507(a)(6).

---

[5]The Court also notes that there are Adversary Proceedings assigned to another Judge in this District, the ultimate disposition of which may have a bearing on the claims which the Trustee ultimately concludes should be subject to distribution.

6

09-08049 - #35  File 01/25/11  Enter 01/25/11 12:49:57  Main Document  Pg 6 of 7

The Commissioner may not bar the enforcement of the bankruptcy codal scheme by resorting to its internal procedures. *See* U.S.C.A Const. Art. 6, cl, 2.  What is required here is a cooperative endeavor, permitting on the one hand the completion of the claims objections process in the bankruptcy court, followed by the department's payment of allowable claims from all funds available for such purpose. This Court is mindful, however, of the requirement of 11 U.S.C. §557 that the determination of interests in, and abandonment or other disposition of grain assets, be determined on an expedited basis.

## Conclusion

The Motion for Summary Judgment is Denied. A separate and conforming Order shall be entered.

# # #